## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, by and through his Mother and Natural Guardian, PARENT 1, | : | CASE NO: |
| | : | |
| and | : | JUDGE: |
| | : | |
| PARENT 1, Mother to John Doe, Individually, | : | |
| | : | |
| and | : | |
| | : | |
| PARENT 2, Father to John Doe, Individually, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| PICKERINGTON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION; | : | |
| | : | |
| and | : | |
| | : | |
| CHRIS BRIGGS, Individually and In his Capacity as Superintendent at Pickerington Local School District, | : | |
| | : | |
| and | : | |
| | : | |
| BENJAMIN BAPTIST, Individually and In his Capacity as Principal at Pickerington Local School District, | : | |
| | : | |
| and | : | |
| | : | |
| MICHELLE HARDESTY, Individually and in her Capacity as a Paraprofessional at Pickerington Local School District, | : | |
| | : | |
| and | : | |
| | : | |
| ROBERT ADAMS, Individually and in his Capacity as a Paraprofessional at Pickerington Local School District, | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT AND JURY DEMAND**

NOW COMES John Doe, together with his parents, Parent 1 and Parent 2 (collectively "Parents"), by and through undersigned counsel, and hereby submit the following Complaint against Defendants as captioned above.

**INTRODUCTION**

1. This Complaint arises from the assault upon John Doe and the reckless failure of Defendants to protect and supervise John Doe, a 15-year-old eighth grader with Autism Spectrum Disorder who attended Lakeview Junior High (hereinafter "Lakeview JH"), a school operated by Defendant Pickerington Local School District Board of Education (hereinafter "PLSDBOE"). At all times relevant to this Complaint, PLSDBOE operated under the direction of Defendant Superintendent Chris Briggs (hereinafter "Briggs").

2. Plaintiffs' claims originated on October 23, 2023, when Defendant Michelle Hardesty (hereinafter "Hardesty"), and/or Defendant Robert Adams (hereinafter "Adams") assaulted John Doe, while he was a student at Lakeview JH. Hardesty and Adams both served as classroom paraprofessionals or aides.

3. As a child with autism, John Doe was particularly vulnerable to harm and required constant careful supervision by trained professional educators.

4. Defendants PLSDBOE, Briggs, and Baptist failed to provide adequate supervision to John Doe on the day the assault occurred and thereafter failed to hold the perpetrators of the abuse accountable for the harm and injury they inflicted.

**JURISDICTION AND VENUE**

5. This Court has exclusive subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§1331 insofar as this Complaint raises issues under the Fourth and Fourteenth Amendments of the United States Constitution.

6.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims asserted by Plaintiffs form part of the same case or controversy as the constitutional and federal claims.

8.    Plaintiffs also bring an action alleging violations of the Title II of the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq*., (the "ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq*. ("Section 504").

9.    This action is also brought to redress violations of Plaintiffs' constitutional rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §1983.

10.   The events giving rise to this lawsuit occurred in Fairfield County, Ohio, located in the Southern District of Ohio, Eastern Division. Venue is proper in the United States District Court, Southern District of Ohio, pursuant to 28 U.S.C. §1391(b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

11.    Venue is also proper in the Southern District of Ohio under 18 U.S.C. §1965 and 28 U.S.C. §1391(c), as the claims arise in this district and all Defendants reside or maintain a principal place of business within the district.

## PARTIES

12.    John Doe is a minor child and student residing in the Pickerington Local School District (hereinafter "the District"), located in Fairfield County, Ohio.

13.    Parent 1 and Parent 2 are the natural parents and legal guardians of John Doe, and, at all relevant times, were residents of Fairfield County, Ohio.

14.    Parent 1 is John Doe's mother and Parent 2 is John Doe's father. John Doe's parents are divorced, and at the time of the assault upon their son, were living together in their Fairfield County home. Thereafter, Parent 2 maintained a second residence in Alexandria, Virginia, where he was employed. As of the date of this filing, John Doe now splits his time at the Fairfield County residences of each parent, per a shared custody agreement.

15.    For purposes of his educational placement, John Doe resides with Parent 1 in Fairfield County, Ohio and is a student in the District.

16.    Defendant PLSDBOE is a political subdivision and board of education operating a public educational institution in Fairfield County, Ohio, organized and existing under the laws of the state of Ohio, with its principal place of business at 90 North East Street, Pickerington, Ohio 43147.

17.    At all times relevant to this Complaint, Defendant Chris Briggs ("Briggs"), in his individual and official capacity, was employed by Defendant PLSDBOE as the Superintendent of the District, acting in the course and scope of his employment except where otherwise alleged herein.

18. At all times relevant to this Complaint, Defendant Benjamin Baptist ("Baptist"), in his individual and official capacity, was a Principal at Lakeview JH in the District, acting in the course and scope of his employment except where otherwise alleged herein.

19. At all times relevant to this Complaint, Defendant Michelle Hardesty ("Hardesty"), in her individual and official capacity, was a Paraprofessional at Lakeview JH in the District, acting in the course and scope of her employment except where otherwise alleged herein.

20. At all times relevant to this Complaint, Defendant Robert Adams ("Adams"), in his individual and official capacity, was a Paraprofessional at Lakeview JH in the District, acting in the course and scope of his employment except where otherwise alleged herein.

## ACTUAL ALLEGATIONS

21. At the time of the incident, John Doe was a 15-year-old student diagnosed with Autism Spectrum Disorder ("autism" or "ASD"), who at all relevant times attended Lakeview JH. He received instruction primarily in a Multiple Disabilities Resource Classroom (hereinafter "MDRC") designed for students with significant disabilities.

22. All Defendants were at all times aware that John Doe was a child with a disability who was cognitively impaired, and dependent on adult supervision and support for his safety and well-being.

23. At all relevant times, John Doe qualified for and received special education services under the Autism category and had an Individualized Education Program (IEP") that specified the specialized instruction, supports, and services he required from PLSDBOE.

24. John Doe has limited verbal abilities and requires sensory input throughout his school day, documented in his IEP as a need for "squeezes." These "squeezes" involved District staff applying gentle pressure to John Doe's arms or shoulders to help regulate his sensory needs

and calm his body. The staff employed other strategies to support John Doe's needs, including the use of weighted blankets and verbal redirection techniques.

25. Despite documentation for this accommodation, PLSDBOE failed to ensure that any staff in John Doe's classroom were trained to perform "squeezes" safely or instructed on appropriate sensory regulation techniques for John Doe's disability-related needs.

26. A reasonable solution to PLSDBOE's program would have been to adequately train staff working with John Doe on how to appropriately perform the "squeezes."

27. John Doe's classroom was overseen by Michelle Massey ("Massey"), a special education teacher, and a paraprofessional, Defendant Hardesty.

28. According to public records from the Ohio Department of Education and Workforce ("ODEW"), Massey held a 5-Year Professional Intervention Specialist (K-12) License.

29. According to ODEW records, Defendant Hardesty held a 1-Year Educational Aide Permit and had received a 1-Year Temporary Substitute Multi-Age PK-12 License the day before the incident, on October 22, 2023.

30. On October 23, 2023, Massey was absent from school. As a result, Defendants PLSDBOE, Briggs, and Baptist chose to staff the MDRC that day with two paraprofessionals, but without a licensed teacher. Upon information and belief, Defendants Hardesty and Adams therefore supervised the MDRC that day, but neither were trained or licensed to independently instruct or manage a classroom of students with severe disabilities.

31. Similar to Defendant Hardesty's limited qualifications, Defendant Adams held a 5-Year Substitute Multi-Age PK-12 License but was not licensed as an intervention specialist and upon information and belief, lacked any training in behavior intervention or sensory support for students with autism.

32. Upon information and belief, students without disabilities at Lakeview JH are afforded properly licensed substitute teachers when their assigned classroom teachers are absent.

33. Upon further information and belief, Defendants PLSDBOE, Briggs, and Baptist failed to ensure that John Doe's classroom was supervised by an appropriately licensed and adequately trained employee(s) on October 23, 2023.

34. While John Doe was at school on October 23, 2023, when he was under the care of only Defendant Adams and/or Hardesty, he was violently assaulted.

35. Around the time John Doe's school bus typically arrived home that afternoon, Parent 1 received a phone call from an unknown number, which went to voicemail. A few minutes later, another call came in from the same number.

36. When Parent 1 answered, the caller identified himself as [Defendant] Mr. Adams and stated that John Doe had a "tough day" and was "asking for a lot of squeezes." Defendant Adams then told Parent 1, that "it may have gotten out of hand, and you might see some bruises."

37. No District staff had contacted Parent 1 earlier in the day to report any behavioral incident, injury, or use of physical restraint involving John Doe.

38. When John Doe arrived home on the bus, the bus driver told Parent 1 that John Doe was "really upset" and that she had never seen him in such distress.

39. Parent 1 boarded the bus and walked down the bus aisle toward John Doe. She saw that he was crying, shaking, and visibly distraught. She immediately noticed red marks on his neck and throat.

40. While unbuckling John Doe's safety harness, Parent 1 observed additional darker bruises, scrapes, and dried blood on his neck and throat.

41. Once off the bus, John Doe ran inside his home, crying inconsolably.

42. When Parent 1 was finally able to examine John Doe, she observed multiple bruises, red marks, and abrasions across John Doe's neck, consistent with finger-shaped imprints. Parent 2 took photographs of the injuries.

43. Parent 1 and Parent 2 verified that the marks did not correspond to his bus harness or any District-issued equipment.

44. The marks and bruising on John Doe's neck were not superficial but were gruesome and indicative of intentional physical abuse or chocking, far beyond any "deep pressure" or safe sensory support technique.

45. When Parent 1 and Parent 2 asked John Doe what happened, John Doe managed to say, "he hurt me," and later said that "Mr. Bob got mad at me. Mr. Bob hurt me," referring to Defendant Adams. He repeated these two phases multiple times that day and evening.

46. The afternoon and evening of the assault, John Doe's behavior was highly atypical: he refused to go outside (which he typically enjoyed), would not eat, had four bowel movements, and slept very little, indicating severe emotional and physical distress.

47. Parent 2 called Defendant Baptist, who was in a meeting, and left an urgent message to speak with him. Parent 2 called back a second time, and spoke with Defendant Baptist, who denied any knowledge of any incidents happening involving John Doe, and confirmed no reports were made about his injuries.

48. Knowing that neither himself nor Parent 1 had received a call or report about an incident at school that day, Parent 2 called the Fairfield County Sheriff's Office to make a report of the assault to Deputy Jesse Embrey ("Embry").

49. Deputy Embrey took down the details of the incident as then known to Parents and advised Parents that they would reach out to District School Resource Officer Tabitha Stephens to

follow up and obtain any videos from Lakeview JH and from the bus ride home.

50.　When the responding deputy arrived later that evening and asked John Doe what had happened, John Doe said "Mr. Bob hurt me" (again referring to Defendant Adams) and pointed to his neck.

51.　On November 3, 2023, the deputy conducted a follow-up interview with John Doe, who again said, "Mr. Bob hurt me" and pointed to his neck, maintaining complete consistency with his initial disclosure.

52.　When later asked about the incident by family, therapists, doctors, and investigators, John Doe refused to discuss it, saying only that he did not want to talk about it, consistent with trauma avoidance.

**Pickerington Local School District's Initial Response to the October 23, 2023, Incident**

53.　After completing her shift on October 23, John Doe's bus driver filled out an incident report noting the bruises and marks she saw around John Doe's neck.

54.　After receiving the aforementioned phone call from Parent 2, Defendant Baptist received and email from Parent 1 containing photographs of the injuries to John Doe.

55.　Despite the three separate reports from Parents and John Doe's bus driver, Defendant Baptist failed to report John Doe's suspected abuse to the proper authorities.

56.　Prior to the incident, when John Doe was struggling or having a difficult day at school, Massey would notify Parent 1, who was occasionally asked to pick John Doe up from school early.

57.　Lakeview JH also maintained a communication log documenting how John Doe was doing at school, typically with two entries per week, which was sent home with him.

58.　The log was not sent home on Monday, October 23, 2023, nor were any log entries made

for that day.

59.   Despite the severity of the incident reported by Parent 2 to Defendant Baptist, the corresponding photographs of injuries provided to Baptist via email from Parent 1, and the usual routine of immediate communication with Parents following difficult days at school, the District failed to generate any incident report or log entry for October 23, 2023, nor was any documentation sent home to Parents acknowledging that District staff admitted the situation "got out of hand."

60.   Despite numerous requests for the bus driver's report of abuse to the District, (which constitutes an educational record under the Family Educational Rights and Privacy Act ("FERPA")), Parents were never given the incident report.

61.   When the gym, lunchroom and recess video footage was made available to Parents, it showed that John Doe had no visible injuries earlier that day, on October 23, while bus video footage from later the same day showed marks visible on John Doe's neck.

62.   In the days and weeks following the assault, John Doe exhibited increased anxiety, regression, and "off days," including heightened agitation, emotional withdrawal, and difficulty trusting adults, consistent with a child who had been physically assaulted and traumatized by trusted caregivers.

63.   Moreover, during the months that followed the assault, John Doe became aggressive and violent at school, showing heightened fear and anger toward Defendant Hardesty, as documented in the composition book that Lakeview JH used for daily/weekly communication with Parents.

64.   Parent 1 repeatedly voiced concerns to District administrators about John Doe's fear and reactions toward Defendant Hardesty over the months following the assault, but her

concerns were dismissed and never investigated.

**Investigation by PLSDBOE**

65.     Based on the complaints made by Parent 1 and Parent 2, an internal investigation was initiated by PLSDBOE on October 24, 2024. This investigation was led by Beth Richardson, Assistant Director of Human Resources for the District.

66.     Parents had no knowledge of an ongoing investigation.

67.     The investigation focused on Defendant Adam's potential involvement in the alleged abuse and whether his actions violated any of PLSDBOE policies.

68.     Defendant Adams was interviewed on October 31, 2023, during a pre-disciplinary meeting. Defendant Adams communicated that John Doe had been "asking for a lot of squeezes" that day and was a bit more escalated than usual.

69.     At the pre-disciplinary meeting, PLSDBOE was made aware that investigations were being conducted by Fairfield County Job and Family Services and the Fairfield County Prosecutor's Office.

70.     Defendant Adams also stated that, during eighth period, Defendant Hardesty informed him that she saw bruises on John Doe's neck, after which Defendant Adams called Parent 1.

71.     Defendant Adams described his relationship with John Doe as positive.

72.     On October 31, 2023, the District interviewed Defendant Hardesty, who communicated that she noticed bruises during eighth period and messaged Defendant Adams about them.

73.     Defendant Hardesty said in her interview with PLSDBOE that she did not recall John Doe being more escalated than usual that day, despite making a statement to the Fairfield County Sheriff's Office Detective Stephens during their interview, that she had contacted Massey, who was absent from work on the day of the assault, to inquire about what she

should do about the marks on John Doe's neck. It is unknown what advice Massey gave to Defendant Hardesty.

74. Despite not reporting the injury to John Doe, Defendant Hardesty did speak with Defendant Baptist on the afternoon of the assault to inquire if Yearbook Club would be cancelled due to the power outage. It is believed that Defendant Hardesty left John Doe alone in the classroom, possibly napping, while she went to the office.

75. Defendant Hardesty also communicated that John Doe made her uncomfortable and that she did not feel he should be at Lakeview JH.

76. On November 1, 2023, PLSDBOE received an inquiry from the State Board of Education, Office of Professional Conduct, regarding the incident.

77. It was not until January 5, 2024, that the PLSDBOE investigation was completed and delivered to then- PLSDBOE Superintendent, Defendant Briggs.

78. The January 5, 2024, Investigation Report (the "Investigation Report") confirmed that an investigation was initiated by PLSDBOE the day after the incident, October 24, 2023, unbeknownst to Parents. Parents first learned that an investigation had transpired when they received a copy of the Investigation Report in the mail in April 2024.

79. The Investigation Report revealed that John Doe was assaulted during the seventh or eighth period, when John Doe was under the care of only Defendant Adams and/or Hardesty.

80. The Investigation Report confirmed that at various times on October 23, 2023, including during the seventh and eighth periods (from approximately 12:43 p.m. to 2:10 p.m.), one of the two paraprofessionals was left alone with the entire class of disabled students, without supervision or assistance from any other staff member or certified teacher.

81. The Investigation Report further revealed that Defendants Adams and Hardesty were

together with the full class during seventh period, but during eighth period, Defendant Adams took the other students to another classroom.

82. The Investigation Report noted that John Doe was left alone, napping in the classroom, while Defendant Hardesty was the only adult present.

83. John Doe's IEP contained no reference for a need for naps, nor any guidelines on when or how he should be permitted to sleep during the school day.

84. Due to Defendant Hardesty's lack of proper qualifications or certifications, John Doe could not receive the full benefit of the education that he was entitled to during that time he was left alone under her supervision, according to the Investigation Report.

85. Upon information and belief, students without disabilities are still afforded their full educational opportunities and experiences when their assigned instructors are absent.

86. During the time that John Doe was asleep, Lakeview JH lost power for 39 minutes, between approximately 1:49 p.m. to 2:28 p.m., reducing visibility and oversight inside the building.

87. Upon information and belief, hallway video footage still exists or once existed that recorded the entire seventh period when both Defendants Adams and Hardesty were with John Doe, and at least part of eighth period, when Defendant Hardesty was alone with him.

88. Lakeview JH hallway video footage also still exists or once existed showing staff and student movement in and out of the classroom, which would help establish the timeline of the assault.

89. However, critical video footage from the time of the assault has been withheld or destroyed, as PLSDBOE has failed to produce any hallway video from the day of the assault during seventh and eighth period, despite multiple requests from Parents.

90. Due to the absence of footage and the lack of real-time reporting by Defendants Adams

and Hardesty, it remains unknown who assaulted John Doe or precisely when the assault occurred.

91.    Available camera footage from earlier in the day shows Defendant Adams giving "squeezes" to John Doe on his upper arm and shoulder, but none with sufficient force, nor in the area where the deep, finger-shaped bruises and abrasions were found on John Doe's neck.

92.    The Investigation Report also indicated that Defendant Hardesty, in her later-compiled report, indicated that she told Defendant Baptist that she noticed bruising at 1:45 p.m. that day. Hardesty did not, however, fill out an incident report, or alert John Doe's family.

93.    Defendant Baptist failed to alert the appropriate authorities after receiving a report of suspected abuse of John Doe.

94.    PLSDBOE's internal investigation specifically referenced video evidence as part of its findings, yet PLSDBOE has withheld all footage from after the lunch recess, when the assault occurred, despite repeated requests by Parent 1 and Parent 2.

95.    The local power company, South Central Power Company, confirmed that the power was out at the school for 39 minutes, from 1:49 p.m. to 2:28 p.m. that afternoon. Seventh period began at 12:43 p.m. and ended at 1:23 p.m., while eighth period began at 1:27 p.m. and ended at 2:10 p.m.

96.    The remaining video footage, from the end of the lunch recess until 1:49 p.m., has not been provided, nor has the entirety of the bus video footage, despite Parents' repeated requests.

97.    PLSDBOE's Investigation Report concludes with guidance on future sensory services to be provided in accordance with John Doe's IEP. The Investigation Report recommended, "if the utilization of a therapy such as squeezes must be an accommodation, it should be

done only by trained staff," along with "training for all staff members who work with students where a physical based therapy is indicated on the IEP."

**Discipline of Involved Actors**

98. On October 24, 2023, PLSDBOE placed Defendant Adams on administrative leave pending the outcome of the investigation but did not place Defendant Hardesty on leave, despite Defendant Hardesty also being present at the time of the incident and potentially involved in the assault of John Doe.

99. On November 13, 2024, Defendant Hardesty received a written reprimand for failing to timely report John Doe's injuries.

100. However, despite the Investigation Report's finding on January 5, 2024, that Defendant Hardesty was alone in the room with John Doe when he was likely assaulted, PLSDBOE never focused an investigation on Defendant Hardesty's role in perpetrating the assault, nor imposed any discipline on Defendant Hardesty for her role in the assault.

101. Defendant Hardesty continued working directly with John Doe and other students with disabilities for the entirety of the 2023-2024 school year.

102. Following the issuance of the Investigation Report on January 5, 2024, PLSDBOE issued a Disciplinary Meeting Notice to Defendant Adams for a disciplinary hearing on April 3, 2024.

103. The purpose of the disciplinary hearing was "to discuss the discipline action regarding the investigation into leaving a mark in the shape of a handprint on the throat of a student that was still red when the student returned home from school."

104. On April 3, 2024, Defendant Adams attended a disciplinary hearing before PLSDBOE. PLSDBOE found that Defendant Adams violated PLSDBOE policy regarding supervision

and welfare of students but determined that there was no finding of intent to harm. PLSDBOE further determined that "John Doe did have bruising in the areas where camera footage confirmed [Defendant] Adams gave squeezes."

105. Despite the severity of the injuries, Defendant Adams only received a written warning, removal from John Doe's classroom, instructions not to interact with John Doe, and a requirement to complete additional training.

106. The written warning specified that it was issued for not immediately reporting the "indications of an accident or injury" to an administrator in violation of the PLSDBOE Policy on "Student Supervision and Welfare."

107. Despite the instructions to not interact with John Doe, Defendant Adams continued to encounter John Doe regularly in communal school areas at Lakeview JH such as the gym and lunchroom, in violation of those directives.

108. Defendant Adams also continued working with other disabled and vulnerable children, potentially exposing them to harm. He continues to be employed at PLSDBOE as a teaching aide assistant as of the date of this filing.

**Substantiated Findings of Abuse by Fairfield County Board Of Developmental Disabilities**

109. On May 15, 2024, the Fairfield County Board of Developmental Disabilities concluded an investigation/review of the Major Unusual Incident reported by the County Board of Developmental Disabilities, in the matter involving Defendant Adam's alleged assault on John Doe.

110. From the evidence collected during the investigation/review, the allegation of physical abuse was "substantiated" based upon a preponderance of evidence which indicates that it is more probable than not that the incident occurred. The allegation is "substantiated"

based upon the following evidence: (1) There is a preponderance of evidence that this incident occurred. (2) There is video footage of the [Defendant Adams] placing his hands on [John Doe]'s neck and squeezing. (3) There are several photographs of the bruises. (4) [Defendant Adams] admits to placing his hands on [John Doe]'s neck and squeezing as part of [John Doe's]'s request for sensory stimulation.

**Resulting Harm to John Doe and His Parents**

111.    John Doe continues to suffer from severe emotional trauma, regression in functional skills, anxiety, and loss of trust in adults as a result of physical abuse, institutional neglect, and concealment by Defendants.

112.    After the assault on John Doe at Lakeview JH, Parent 1 needed additional help and support with her son because of his escalated, regressive behavior both at home and at school.

113.    Parent 2, who was employed in Washington, D.C. as a defense contractor, began making more frequent trips back to Ohio, to help address John Doe's escalated needs.

114.    In addition, Parent 1 and Parent 2 frequently received calls during their workdays from PLSDBOE personnel to discuss problematic behaviors that were happening at Lakeview JH.

115.    Both Parent 1 and Parent 2 took time off from work to attend meetings with community organizations, police, and mental health professionals.

116.    Focusing on work became increasingly difficult for both Parent 1 and Parent 2, given their concerns about their son's safety at Lakeview JH.

117.    While Parent 2 was required to be in his office in Alexandria, Virginia four days per week, he returned weekly to his home in Violet Township, Ohio to support John Doe and Parent 1 in the weeks and months after the assault.

118.    For two years, Parent 1 experienced significant emotional harm because of Defendants' actions and inactions and suffered from debilitating trauma. She became anxious and depressed and feared for John Doe's safety. She lost trust in PLSDBOE staff and is reluctant to be away from her son or to leave him in the care of anyone new. She fears PLSDBOE has not done enough to prevent future assaults on John Doe at the hands of his perpetrator, nor to train staff in how to address the needs of autistic students.

119.    John Doe began taking anti-anxiety medication by his physician after the assault.

120.    On May 17, 2024, Parent 2 left his dream job and career, and moved back full-time to Violet Township, Ohio to be closer to his son, and help care for him day-to-day, along with Parent 1.

121.    Parent 1, who was only in the second month of a leadership position at her job, had to take a great deal of time off to attend meetings with PLSDBOE personnel, Children's Protective Services, the FCBDD, and mental health professionals.

122.    While Parent 1 tried to keep this highly personal matter private, she was forced to share some details with her work supervisor, because she felt her fear and anxiety were adversely affecting her job performance at the office.

123.    On August 5, 2024, Parent 1 left her job to care for John Doe, unable to balance her son's needs and her professional responsibilities.

124.    Parent 1 and Parent 2 both suffered economic loss because of their changes in employment and missed days of employment due to Defendants' actions and inactions.

125.    Parent 2 suffered additional economic loss when he incurred substantial travel expenses in the months traveling between his work residence in Alexandria, Virginia, and incurred additional housing costs associated with maintaining the Virginia residence for two and a

half months, until the term of his lease ended, beyond the start date of his new position in Ohio.

## CAUSES OF ACTION

### COUNT I
### Violation of Right to Bodily Integrity
### Fourth and Fourteenth Amendments to the U.S. Constitution
### (via 42 U.S.C. §1983)
### *John Doe as to All Defendants*

126. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

127. At all times relevant herein, Plaintiff John Doe had a right to bodily integrity which is protected by the Fourth Amendment, as well as by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

128. The October 23, 2023, physical assault of John Doe constitutes a deprivation of his right to bodily integrity protected by the Fourth and Fourteenth Amendments to the United States Constitution.

129. PLSDBOE, by and through its authorized officials, including Defendants Briggs, Baptist, Adams, and Hardesty, failed to adhere to its adopted custom and policies regarding aggressive behavior, restraint, corporal punishment, reporting and investigating suspected child abuse, and respecting student privacy, among others.

130. The actions of Defendants Briggs, Baptist, Adams, and Hardesty were a departure from PLSDBOE's policies and practices. Defendants Briggs, Adams, and Hardesty, and by association PLSDBOE, failed to adhere to PLSDBOE custom and policy of protecting students from aggressive behavior, restraint, and corporal punishment, investigating and reporting suspected child abuse, and protecting student privacy, which proximately caused

the deprivation of John Doe's rights.

131.   Defendants' failure to adhere to PLSDBOE policies, practices, and customs, constituted omissions that manifest deliberate indifference to the rights of John Doe. Defendants' serious violations of these policies, practices, and customs, proximately caused the deprivation of and infringement upon John Doe's constitutional rights.

132.   Defendants had an affirmative duty to protect their students from harm when there existed a state-created danger; a violation of this duty under these circumstances is actionable under 42 U.S.C. §1983.

133.   As a proximate result of Defendants' deliberate indifference to Defendant PLSDBOE's own custom and policy as detailed above, John Doe suffered a violation of his constitutionally protected Fourth and Fourteenth Amendment rights. In turn, the violations by the Defendants proximately caused John Doe's significant emotional and psychological trauma, which is actionable under 42 U.S.C. §1983.

134.   As a result of the deprivation of John Doe's constitutional rights, John Doe suffered and continued to suffer severe emotional and psychological trauma. John Doe is entitled to recover all damages proximately resulting from the deprivation of his constitutional rights as detailed above, including attorney fees.

135.   As a result of the deprivation of John Doe's constitutional rights and resulting emotional and psychological trauma, John Doe is seeking special damages in an amount to be proven at trial.

**COUNT II**
**Violation of Right to Substantive Due Process**
**Fourteenth Amendment to the U.S. Constitution**
**(via 42 U.S.C. §1983)**
***Plaintiffs as to All Defendants***

136.  Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

137.  The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school. *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996).

138.  John Doe had a right to personal security and bodily integrity while he attended school at Lakeview JH.

139.  Parent 1 and Parent 2 had a right to be notified and informed of any suspected child abuse of their minor son, John Doe.

140.  The actions of Defendants constitute violations of Plaintiffs' constitutional right to substantive due process pursuant to the Fourteenth Amendment of the U.S. Constitution, in that the Defendants' reckless and/or intentional conduct, as described herein, injured Plaintiffs in a way that shocks the conscience.

141.  As a direct result of the actions and conduct of Defendants, Plaintiffs suffered and continue to suffer extreme emotional pain and suffering. John Doe has also suffered a loss of educational opportunities and meaningful associations.

142.  As a result of the deprivation of Plaintiffs' constitutional rights and resulting emotional and psychological trauma, Plaintiffs are seeking special damages in an amount to be proven at trial.

<u>**COUNT III**</u>
<u>**Supervisory Liability**</u>
<u>**(via 42 U.S.C. §1983)**</u>
***Plaintiffs as to Defendants Briggs and Baptist***

143.  Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

144. At all times relevant, Defendant Briggs was employed by Defendant PLSDBOE as Superintendent, and Defendant Baptist was employed by Defendant PLSDBOE as Principal of Lakeview JH.

145. Defendants Briggs and Baptist, by virtue of their positions, exercised supervisory authority over employees, including Defendant Adams and Defendant Hardesty, and were responsible for ensuring compliance with laws, regulations, and PLSDBOE policies concerning student safety and welfare.

146. Defendants Briggs and Baptist, by virtue of their positions, had a responsibility to oversee staffing levels and competencies in PLSDBOE classrooms, and guarantee that students were safe and continued to receive educational benefits during teacher absences.

147. Defendants Briggs and Baptist knew or reasonably should have known that Defendants Adams and Hardesty were interacting physically with students in ways that presented a substantial risk of harm, and that Defendant Adams and/or Defendant Hardesty posed a foreseeable risk of using excessive or inappropriate physical force.

148. Despite this knowledge, Defendants Briggs and Baptist failed to properly train, supervise, investigate, or discipline staff members under their authority, and thereby allowed an environment of tolerance toward the use of excessive force against students.

149. Following the incident in which Defendant Adams and/or Defendant Hardesty assaulted John Doe, Defendants Briggs and Baptist failed to take appropriate and immediate corrective or protective action, instead allowing staff to remain in contact with students and minimizing or disregarding the seriousness of the allegations.

150. Defendants Briggs' and Baptist's actions and inactions were taken with deliberate

indifference to the constitutional rights of John Doe and other students, including their right to bodily integrity and to substantive due process while in the custody and care of public school officials.

151. The deliberate indifference, failure to act, and failure to train or supervise on the part of Defendants Briggs and Baptist were a direct and proximate cause of the constitutional violations and injuries suffered by John Doe.

152. As a direct and proximate result of Defendants Briggs' and Baptist's deliberate indifference and failure to act, John Doe suffered physical injury, emotional distress, pain, and humiliation, and Parents suffered economic and emotional harm, including lost wages and the necessity of quitting their jobs, to care for and support John Doe in the aftermath of his injuries.

153. The conduct of Defendants Briggs and Baptist constitute a violation of 42 U.S.C. §1983, as well as the rights of John Doe, Parent 1, and Parent 2 under the Fourteenth Amendment to the United States Constitution.

**COUNT IV**
**Violation of the Standard in Monell v. Dept. of Social Services**
**(via 42 U.S.C. §1983)**
*Plaintiffs as to Defendants PLSDBOE*

154. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

155. The actions of the Defendant PLSDBOE, in (a) failing to adequately train paraprofessionals and staff on appropriate physical interaction and de-escalation techniques for students with disabilities; (b) failing to monitor or discipline employees known to have used inappropriate physical restraint or excessive force on students; (c) tolerating and ratifying staff conduct involving the use of unauthorized and excessive physical force; (d) failing to

implement or enforce adequate reporting and investigation procedures following reports or indications of student injury or abuse; and (e) creating a culture in which violations of student safety policies were ignored, minimized, or covered up, constitute a violation of PLSDBOE's obligations to maintain lawful policies and procedures pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

156. Reasonable persons in Defendant PLSDBOE's position would have concluded that maintaining such policies, practices and procedures that allowed and/or perpetuated the use of inappropriate physical restraint or excessive force on students was unconstitutional.

157. As a direct result of the actions and conduct of Defendant PLSDBOE, Plaintiffs suffered and continue to suffer extreme emotional pain and suffering, lost wages, a loss of educational opportunities and a loss of meaningful associations.

**COUNT V**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. §794, *et seq.***
**John Doe as to Defendant PLSDBOE**

158. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

159. Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations provide, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 794(a); see also 34 C.F.R. § 104.4(a).

160. A person is an "individual with a disability" under Section 504 if that person experiences "a physical or mental impairment which substantially limits one or more major life

activities." 29 U.S.C. § 705(20)(B) (incorporating definition in 42 U.S.C. § 12102 by reference).

161. "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

162. John Doe is an "otherwise qualified individual with a disability" within the meaning of Section 504. 29 U.S.C. §§ 794, 705(20).

163. Moreover, a "program or activity" under Section 504 includes public K-12 school districts and a "department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b) (referencing 20 U.S.C. § 7801(30)).

164. Section 504's K-12 education regulations apply to "preschool, elementary, secondary, and adult education programs or activities that receive Federal financial assistance and to recipients that operate, or that receive Federal financial assistance for the operation of, such programs or activities." 34 C.F.R. § 104.31.

165. Pursuant to 29 U.S.C. § 794(a), the predecessor to the U.S. Department of Education promulgated regulations regarding application of Section 504's antidiscrimination mandate to K-12 schools that receive federal funding. The obligations under these regulations are in addition to the general antidiscrimination requirements of 29 U.S.C. § 794.

166. PLSDBOE is a "program or activity" under Section 504 and a recipient of federal financial assistance for the provision of elementary and secondary education and are therefore obligated to comply with Section 504 and the regulations under 34 C.F.R. Part 104.

167. All Defendants are responsible for administering and/or supervising PLSDBOE's services,

programs, and activities for children with disabilities.

168. At all times pertinent to this Complaint, John Doe was entitled to participate in Defendant PLSDBOE's educational programs and services as a school-age child residing in Fairfield County.

169. Through the acts and omissions set forth herein, Defendant PLSDBOE, acting under color of law, discriminated against John Doe based on disability and in violation of Section 504, including, but not limited to, utilizing methods of administration that had the effect of subjecting John Doe to discrimination on the basis of disability.

170. PLSDBOE's violations of Section 504 have caused, and continue to cause, actual and proximate harm to John Doe.

171. At the time PLSDBOE violated John Doe's rights under Section 504 as set forth above, PLSDBOE, and its respective agents, had knowledge that a harm to a federally protected right was substantially likely, and were deliberately indifferent to that risk.

172. As a direct and proximate result of PLSDBOE's actions and inactions, John Doe has sustained injuries and damages, including, but not limited to, physical injury; pain and suffering; loss of education; loss of academic and intellectual progress; loss of future earning capacity; loss of fundamental constitutional rights; economic loss; mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment; psychological damage; and loss of relationships.

### COUNT VI
### Violation of Title II of the ADA
### 42 U.S.C. §12131, *et seq.*
### *John Doe as to Defendant PLSDBOE*

173. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

174. 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

175. "Qualified individual with disability" has the same meaning under Title II of the ADA and under Section 504 as set forth above. 20 U.S.C. § 12102.

176. John Doe is a qualified individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102.

177. Under Title II of the ADA, a public entity includes any state or local government and any "department, agency, special purpose district, or other instrumentality of a State or States or local government." 28 C.F.R. § 35.104.

178. Defendant PLSDBOE is a public entity subject to Title II of the Americans with Disabilities Act (ADA).

179. PLSDBOE intentionally violated John Doe's rights under the ADA and its regulations by subjecting him to discrimination. 42 U.S.C. § 12132.

180. PLSDBOE otherwise intentionally discriminated against John Doe in violation of 42 U.S.C. § 12132.

181. Disability discrimination under Title II also includes a public entity's failure to make reasonable modifications necessary to avoid disability discrimination. 28 C.F.R. § 35.130(b)(7).

182. ADA regulations specify, inter alia, that it is unlawful discrimination for a public entity either directly or through contractual, licensing, or other arrangements to:

    a. "[a]fford a qualified individual with a disability an opportunity to participate

in or benefit from the aid, benefit, or service that is not equal to that afforded

to others;"

b.    "[p]rovide a qualified individual with a disability with an aid, benefit, or

service that is not as effective in affording equal opportunity to obtain the

same result, to gain the same benefit, or to reach the same level of

achievement as that provided to others;

c.    "[o]therwise limit a qualified individual with a disability in the enjoyment of

any right, privilege, advantage, or opportunity enjoyed by others receiving

the aid benefit, or service." 28 C.F.R. § 35.130(b)(1).

183.    Moreover, Under the ADA regulations, "[a] public entity may not, directly or through

contractual or other arrangements, utilize criteria or methods of administration: (i) That

have the effect of subjecting qualified individuals with disabilities to discrimination on the

basis of disability; [or] (ii) That have the purpose or effect of defeating or substantially

impairing accomplishment of the objectives of the public entity's program with respect to

individuals with disabilities . . . ." 28 C.F.R. § 35.130(b)(3).

184.    Through the acts and omissions described herein, PLSDBOE, acting under color of law,

discriminated against John Doe in violation of the ADA, including, but not limited to the

following ways:

a.    Denying John Doe the opportunity to participate in or benefit from

educational services equal to that afforded to others;

b.    Denying John Doe educational services that are as effective in affording

equal opportunity to obtain the same result, gain the same benefit, or reach

the same level of achievement as that provided other students;

    c.    Failing to make reasonable modifications to its programs and services necessary to avoid discrimination against John Doe; and

    d.    Utilizing methods of administration that have the effect of defeating or substantially impairing the accomplishment of the objectives of PLSDBOE's educational programs with respect to John Doe.

185. At the time PLSDBOE violated John Doe's rights under the ADA as set forth above, PLSDBOE, and its respective agents, had knowledge that a harm to a federally protected right was substantially likely, and were deliberately indifferent to that risk.

186. As a direct and proximate result of PLSDBOE's actions and inactions, John Doe has sustained injuries and damages, including, but not limited to, physical injury; pain and suffering; loss of education; loss of academic and intellectual progress; loss of future earning capacity; loss of fundamental constitutional rights; economic loss; mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment; psychological damage; and loss of relationships.

## COUNT VII
## Failure to Report Suspected Child Abuse
## O.R.C. § 2151.421
### *Plaintiffs as to All Defendants*

187. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

188. Ohio Revised Code §2151.421(A)(1)(a) requires that no school employee who has "reasonable cause to suspect…that a child under eighteen years of age…has suffered …any…condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge…to [to the public children services agency]."

189. As detailed in this Complaint, Defendants Adams and Hardesty had firsthand knowledge

of the abuse, and Defendants Briggs, Baptist, and PLSDBOE administration was notified of the suspected child abuse after Parent 1 and Parent 2 reported their concerns to Defendant Baptist.

190. Despite their knowledge, all Defendants failed to report the suspected abuse to the local children's services agency.

191. The actions of Defendants deviated substantially from the PLSDBOE policies applicable to Defendants.

192. As a direct result of the actions and conduct of Defendants, Plaintiffs suffered and continue to suffer extreme emotional pain and suffering. John Doe has also suffered a loss of educational opportunities and meaningful associations.

**COUNT VIII**
**Intentional Infliction of Emotional Distress**
***Plaintiffs as to All Defendants***

193. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

194. Defendants, through their acts and omissions described herein, intended to cause emotional distress to Plaintiffs by recklessly permitting John Doe to attend school while bearing visible fingerprint marks and abrasions around his neck and exhibiting emotional trauma; by failing to investigate the cause of those injuries; by intentionally misleading Parents 1 and 2 regarding whether an investigation had been conducted; and by failing to ensure John Doe's safety under the supervision of classroom paraprofessionals.

195. Defendants allowed Defendant Hardesty, the only person with John Doe when he was assaulted, to remain in John Doe's classroom for the remainder of the school year, an additional 7 months, with John Doe and other disabled students, and permitted her to

deliver paraprofessional services to John Doe, despite her role in the assault.

196. Defendants' conduct was extreme and outrageous, beyond the bounds of decency and was such that the conduct should be considered utterly intolerable in a civilized society.

197. Defendants were the proximate cause of Plaintiffs' psychiatric injuries and the mental anguish suffered was of a nature that no reasonable person in the Plaintiffs' position could be expected to endure it.

**COUNT IX**
**Assault**
***John Doe as to Defendants Adams and Hardesty***

198. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

199. Defendants Adams and Hardesty intentionally and/or recklessly caused harm to John Doe on October 23, 2023, when they caused dark red marks, fingerprints, bruises, scrapes and dried blood on John Doe's neck and throat by choking him.

200. This count of assault is brought against both Defendant Adams and Defendant Hardesty, as John Doe's allegations indicate that Defendant Adams committed the assault, but the Investigation Report also revealed that Defendant Hardesty could have been responsible.

201. These actions deviated substantially from the standards of educator conduct applicable to Defendants Adams and Hardesty, as well as from the PLSDBOE policies applicable to them.

202. Defendants Adams and Hardesty's intentional and/or reckless assault of John Doe caused John Doe to suffer significant emotional damage that continues to date, including, but not limited to, anxiety, depression, nightmares, insomnia, and fear.

**COUNT X**
**Negligence**

*Plaintiffs as to Defendants Briggs, Baptist, Adams, and Hardesty*

203. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

204. Defendants Briggs, Baptist, Adams, and Hardesty owed Plaintiffs a duty of ordinary care.

205. Defendants Briggs, Baptist, Adams, and Hardesty's actions and inactions beached the duty of ordinary care.

206. Defendants Briggs, Baptist, Adams, and Hardesty's acted manifestly outside the scope of their employment or official responsibilities.

207. All Defendants acted with malicious purpose, in bad faith, and in a wanton and reckless manner.

208. Plaintiffs suffered damages as a direct and proximate cause of Defendants' breaches.

## COUNT XI
### Negligent Hiring, Supervision, and Retention
*Plaintiffs as to Defendants PLSDBOE, Briggs, and Baptist*

209. Plaintiffs reallege and incorporate by reference each of the paragraphs written above as if fully set forth herein.

210. Defendant PLSDBOE is and was at all times relevant to the complaint, the governing body for a public school district operating under the laws of the State of Ohio.

211. Defendant PLSDBOE employed educators charged with protecting the safety of their students, including John Doe.

212. Defendants Adams and Hardesty, at all relevant times, were employed by PLSDBOE as paraprofessionals, Defendant Briggs was at all relevant times employed by PLSDBOE as a superintendent, and Defendant Baptist was at all relevant times employed by PLSDBOE as a principal.

213. Defendant PLSDBOE employed Defendants Briggs and Baptist with the purpose of supervising educators within the District, including Defendants Hardesty and Adams.

214. Defendants Adams and Hardesty were unfit to protect and supervise John Doe. A significant part of their employment was to supervise students and ensure they refrained from placing them in unreasonable or avoidable danger.

215. Parent 1 and Parent 2 made multiple complaints to Defendants PLSDBOE, Briggs, and Baptist, including but not limited to, complaints about Defendants Adams and Hardesty's abuse of John Doe.

216. Defendants PLSDBOE, Briggs, and Baptist were on notice as to the unfitness of Defendants Adams and Hardesty and knew or should have known that they were unfit to supervise and protect John Doe.

217. Defendants PLSDBOE, Briggs, and Baptist recklessly and intentionally failed to provide adequate supervision to prevent the initial assault on John Doe by Defendants Adams and Hardesty.

218. Thereafter, Defendants PLSDBOE, Briggs, and Baptist intentionally and inappropriately retained Defendants Adamas and Hardesty and continued to allow them access to students despite the obvious and substantial risk to student safety.

219. As a result of the inaction and lack of supervision, John Doe was harmed and suffered greatly as a result of the incompetence, unfitness, and reckless disregard for student safety by Defendants Adams and Hardesty.

220. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. That each Defendant be required to answer within the time prescribed by law;

2. A declaration that the acts and conduct of all Defendants constitute violations of Plaintiffs' constitutional, statutory, and common-law rights;

3. An award to Plaintiffs against all Defendants, jointly and severally, an appropriate amount of compensatory and punitive damages;

4. Equitable relief requiring Defendants follow policies to protect students in attendance from harassment, abuse, and discriminatory conduct;

5. Reimbursement of court costs and attorney fees;

6. Any other relief the Court deems appropriate.

Respectfully submitted,

*/s/ Ruth Pack-Adler, Esq.*

Ruth Pack-Adler (0067446)
Mark A. Weiker (0086413)
ABDNOUR WEIKER, L.L.P.
262 South 3rd Street
Columbus, Ohio 43215
T: (614) 745-2001
F: (614) 417-5081
E:ruth@awlawohio.com
mark@awlawohio.com
*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

*/s/ Ruth Pack-Adler, Esq.*
Ruth Pack-Adler (0067446)

## <u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the foregoing was served on this 18th day of November 2025, via the Court's electronic filing system, upon:

**Pickerington Local School District Board of Education**
Attn: Treasurer
90 North East Street
Pickerington, Ohio 43147

**Dr. Chris Briggs, Former Superintendent**
**Pickerington Local School District**
90 North East Street
Pickerington, Ohio 43147

**Mr. Benjamin Baptist, Principal**
**Pickerington Local School District**
90 North East Street
Pickerington, Ohio 43147

**Mr. Robert Adams**
**Pickerington Local School District**
90 North East Street
Pickerington, Ohio 43147

**Ms. Michelle Hardesty**
**Pickerington Local School District**
90 North East Street
Pickerington, Ohio 43147

**Counsel of Record:**
Melissa Martinez Bondy, Esq.
Bricker Graydon
100 South Third Street
Columbus, Ohio 43215
mbondy@brickergraydon.com

*/s/ Ruth Pack-Adler*
Ruth Pack-Adler (0067446)